IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SKY TECHNOLOGIES, LLC § | | |
| Plaintiff § | | |
| § | | |
| V. § | No. 2:06CV440 | |
| § | | |
| SAP AG, SAP AMERICA, INC. AND § | | |
| ORACLE CORPORATION § | | |
| Defendants § | | |

## ORDER

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for Assignment of Duties to United States Magistrate Judges, Defendants' Motion for Entry of Protective Order (Docket Entry # 87) and Motion for Protective Order (Docket Entry # 91) were referred to the Honorable Caroline M. Craven for the purposes of hearing and determining said motions. The Court, having reviewed the relevant briefing, issues the following Order.

### THE MOTIONS FOR PROTECTIVE ORDER

The parties agree that a protective order is necessary in this case. The parties have agreed to all parts of the proposed protective order except as it relates to the prosecution bar against Jeffrey Conklin, Sky's sole employee and CEO and primary inventor of the patents at issue in this suit. Defendants propose that Mr. Conklin not be allowed to review Defendants' confidential information unless he agrees not to: (1) perform any kind of patent prosecution activities for two years; or (2) engage in competitive decision making activities for two years as it relates to the patents-in-suit.

Although Plaintiff agrees with Defendants' argument that Mr. Conklin should not be allowed to engage in new patent prosecution activities related to Defendants' confidential information,

Plaintiff asserts the narrow exception Plaintiff seeks is necessary as some sort of "administrative maintenance" is typically involved in maintaining the integrity of one's patents. For example, Plaintiff states the Patent & Trademark Office ("PTO") may request a review or reexamination of Plaintiff's claims, which would necessarily require Mr. Conklin's involvement.

Plaintiff proposes that this exception to Defendants' proposed bar apply only as it relates to licensing Plaintiff's patents and patented technology. Plaintiff represents to the Court that Mr. Conklin has no plans to license software products or code, and Defendants' confidential information related to this would in no way be compromised or utilized by Mr. Conklin. In addition, Mr. Conklin agrees that he will not review Confidential Information as it relates to Defendants' licensing of its own patents or patented technology.

On the other hand, Defendants assert allowing Mr. Conklin access to Defendants' sensitive and commercial materials, while permitting him to engage in the activities that fall within Plaintiff's proposed exceptions, poses a substantial risk of harm to the Defendants. According to Defendants, Plaintiff has not met its burden of showing that precluding Mr. Conklin from access to such material would be prejudicial to Plaintiff given that Plaintiff is represented by competent outside counsel and experts with access to the material. Defendants further assert Plaintiff's proposal is flawed in two additional ways that pose an unnecessary risk to Defendants' legitimate interests. First, under Plaintiff's proposal, those who view "CONFIDENTIAL -- ATTORNEYS EYES ONLY" materials would be permitted to pursue patent prosecution and competitive decision making activities while this lawsuit is pending. Second, Defendants assert Plaintiff's proposal would permit unfettered disclosure of information derived from confidential information.

According to Defendants, Mr. Conklin is actively engaged in patent prosecution activities

in technology areas identical or substantially similar to those at issue in this case. Defendants state he is currently prosecuting at least one patent application that claims priority from the patents-in-suit. Defendants assert if Mr. Conklin were granted access to Defendants' "CONFIDENTIAL -- ATTORNEYS EYES ONLY" material, there is substantial opportunity for Mr. Conklin to introduce or amend patent claims in pending or continuation applications, through reinstatement of abandoned applications or through reissue or reexamination of recently issued patents to reflect such confidential material. *See* 37 C.F.R. § 1.137; *see also* 35 U.S.C. §251. For example, according to Defendants, Mr. Conklin could seek a broadening reissue of those patents in suit that have issued less than two years ago, which would be particularly harmful to Defendants if such a reissue was sought to broaden the claims in light of the confidential technical information regarding Defendants' products at issue in this case.

## APPLICABLE LAW

Patent prosecution restrictions, if properly narrow in scope, are workable and appropriate. *See Interactive Coupon Marketing Group, Inc. v. H.O.T.! Coupons, L.L.C.*, 1999 WL 618969 (N.D. Ill. 1999)(restricting the plaintiff's patent prosecution counsel who are privy to confidential information from prosecuting related patents during the pendency of the case and for one year after the conclusion of the litigation, including appeals). Despite the assumption that each party's attorneys would not intentionally disclose confidential information, there is a risk of inadvertent disclosure of confidential information by counsel who are also involved in patent prosecution. This Court must balance the risk of inadvertent disclosure against the risk that the Protective Order will impair the prosecution or defense of the other party's claims. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). In considering this issue in the case of *In re Papst*

*Licensing*, 2000 WL 554219, * 4 (E.D. La. 2000), the court stated the following:

> Counsel's ability to file new claims in existing and pending patents based on the confidential information discovered during the course of this litigation poses an unacceptable opportunity for inadvertent disclosure and misuse. Although the Court is confident that counsel for the Papst parties maintains the highest ethical and professional standards, the risk of inadvertent disclosure and misuse and the difficulty of distinguishing the source of the Papst parties' basis for filing new claims are great.

*Id.*

## DISCUSSION

The Court is of the opinion good cause exists for a prosecution restriction. While the Court is confident that Mr. Conklin maintains the highest ethical standards, the risk of inadvertent disclosure of Defendants' confidential information outweighs the impairment, if any, of Plaintiff's ability to litigate this action. It is this risk of *inadvertent* disclosure and the difficulty of distinguishing the source of a party's belief for filing new claims that makes Plaintiff's provision, limiting the disclosure of any confidential information received from a disclosing party in patent applications and related documents, insufficient. The Court now considers whether Defendants' proposal is properly tailored or whether the Court should utilize Plaintiff's latest proposal.

According to Plaintiff's original proposal, Mr. Conklin would sign a certification that provides:

> I agree that I will not engage in patent prosecution activities materially related to the Confidential Material for the next two years to the extent that I will not file or prosecute any new claims materially related to the Confidential Material. However, I reserve the right to perform patent prosecution activities with respect to any reexamination or reissue of the existing claims in the Patents-in-Suit . . . .

(Plaintiff's Proposed Protective Order, Exhibit C at 23). However, Defendants assert the restriction on Mr. Conklin's patent prosecution activities would only be limited "to the extent that [Mr.

Conklin] will not file or prosecute any new claims materially related to the Confidential Material." Defendants assert this language allows Mr. Conklin to prosecute claims already existing before the Patent Office, including amending existing claims to change their scope, which is Defendants' principle concern. Defendants contend there is substantial risk that Mr. Conklin could change existing claims, intentionally or inadvertently using Defendants' confidential information. *See, e.g., Cummins-Allison Corp. v. Glory Ltd.*, 2003 U.S. Dist. Lexis 23653, at *23 (N.D. Ill. Dec. 31, 2003) ("It is that intimate involvement in the shaping and revision of patent applications that provides for the risk that patent counsel inadvertently will use information obtained from a party in patent litigation in shaping the application."). Defendants further assert public records reveal Mr. Conklin has pending applications related to the patents-in-suit that are currently listed as abandoned, which could be revived in order to modify their claims.

Regarding the second exception giving Mr. Conklin access to Defendants' "CONFIDENTIAL -- ATTORNEYS EYES ONLY" material while permitting him to "perform patent prosecution activities with respect to any reexamination or reissue of the existing claims in the Patents-in-Suit," Defendants explain that the reissue statute expressly allows an applicant to seek to enlarge the scope of the claims of an existing patent as long as the reissue is sought within two years of the grant of the original patent. *See* 35 U.S.C. § 251. Defendants state Plaintiff's proposal would give Mr. Conklin "free reign" to draft claims in light of Defendants' confidential material – precisely the type of unacceptable risk that a blanket protective order is designed to prevent.

For these reasons, Defendants propose that Mr. Conklin be precluded from accessing Defendants' "CONFIDENTIAL -- ATTORNEYS EYES ONLY" material in the first place. Defendants assert Plaintiff has not given any reason why Plaintiff would be prejudiced if he is

precluded from reviewing this material.

Defendants' proposed Protective Order also covers "information derived from Confidential Information" and not simply information marked "CONFIDENTIAL -- ATTORNEYS EYES ONLY." According to Defendants, this would prevent a person from reviewing the "CONFIDENTIAL -- ATTORNEYS EYES ONLY" material and summarizing for a person not eligible to view such material. Defendants assert people who are barred from viewing "CONFIDENTIAL -- ATTORNEYS EYES ONLY" material should not be able to gain access to this information through a third party eligible to view the information summarizing it for them.

Mr. Conklin, as Sky's CEO and sole employee responsible for licensing, is engaged in competitive decision making that could unfairly prejudice Defendants if he were to review Defendants' "CONFIDENTIAL -- ATTORNEYS EYES ONLY" material. Knowledge of Defendants' confidential information, particularly Defendants' confidential financial information, would provide Mr. Conklin with information that he would use in any licensing negotiation. Given Mr. Conklin's extensive role in licensing Plaintiff's patents, there is no reasonable justification for the risk of inadvertent disclosure and misuse posed by allowing Mr. Conklin access to Defendants' "CONFIDENTIAL - ATTORNEYS EYES ONLY" material.

Plaintiff will not be prejudiced by the entry of Defendants' protective order. A party is not prejudiced because it is required to rely on competent outside counsel and/or experts. *See Brown Bag*, 960 F.2d at 1471. Under Defendants' protective order, both Plaintiff's outside counsel and experts have access to "CONFIDENTIAL - ATTORNEYS EYES ONLY" material. Not only is this information available to Plaintiff's outside counsel and experts, but Plaintiff has offered no reason why its interests cannot be adequately represented by these individuals. For these reasons, the Court

finds Defendants' proposed protective order appropriate. Accordingly, it is

**ORDERED** that Defendants' Motion for Entry of Protective Order (Docket Entry # 87) is **GRANTED** and Motion for Protective Order (Docket Entry # 91) is **DENIED**. The Court will enter the proposed protective order submitted by Defendants.

**SIGNED this 9th day of July, 2007.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE